## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JERROD T. K.,[1]                          )
                                          )
                **Plaintiff,**                 )
                                          )     **CIVIL ACTION**
v.                                        )
                                          )     **No. 20-1368-JWL**
KILOLO KIJAKAZI,[2]                       )
**Acting Commissioner of Social Security,**  )
                                          )
                **Defendant.**                 )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

I.      **Background**

Plaintiff protectively filed applications for DIB and SSI benefits on October 5, 2018.  (R. 15, 249, 262).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in failing to resolve the ambiguity between the residual functional capacity (RFC) he assessed and Plaintiff's allegations of a need to elevate his legs and to lie down due to swelling in his lower extremities.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P. App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## I.    Discussion

Plaintiff points out he testified of edema in his lower extremities and that he had to lie down during the day and elevate his feet above his heart to relieve the edema.  (Pl Br. 11-12).  He notes that the ALJ acknowledged his testimony and acknowledged the medical records contain reports of edema.  Id. at 12.  Plaintiff acknowledges the ALJ's finding of "moderate ongoing edema" which "has not been significant in nature," id. (quoting R. 23), but argues the ALJ erred in failing to explain why the RFC did not include a requirement for Plaintiff to lie down and to elevate his legs.  Id. at 12-13.

4

Plaintiff goes on to argue that none of the remainder of the ALJ's findings provide an explanation for the ALJ's failure to include a requirement for Plaintiff to lie down and to elevate his legs.  (Pl. Br. 14-16).

The Commissioner argues the RFC assessed is supported by substantial evidence. (Comm'r Br. 4).  She points out the ALJ discussed Plaintiff's edema and his discussion is supported by the record evidence, and she argues, "No [medical] opinion even hinted that Plaintiff had the limitations he later claimed at the hearing."  Id.  She argues, "the mere existence of ongoing edema does not prove that Plaintiff had the extreme limitations he claimed at the hearing."  Id. at 6.  She argues, "The ALJ does not need to 'explicitly state "I find this statement credible" or "I find this statement not credible"'" but simply to set forth the specific evidence he relies upon when evaluating a claimant's allegations.  Id. at 6-7 (quoting Keyes-Zachery v. Astrue, 695 F.3d 1156, 1169 (10th Cir. 2012).

In his Reply Brief, Plaintiff argues the Commissioner's suggestion the ALJ was not required to provide a specific explanation why he did not include limitations for lying down and elevating his feet is no more than impermissible post hoc rationalization. (Reply 2).  He acknowledges the record showed improvement in his edema but argues, "The ALJ did not, however, indicate that any limitation in prolonged sitting, elevating the legs, or lying down was omitted due to improvement of symptoms," but recognized "moderate ongoing edema."  (Reply 2-3).  He concludes, "The error here lies in the ALJ's failure to explain why [Plaintiff]'s allegations were omitted when the record contained numerous objective findings of edema to support his allegations."  Id. at 3.

### A.    Standard for Evaluating a Claimant's Allegation of Symptoms

The court's consideration of an ALJ's evaluation of a claimant's allegations is deferential. Such evaluations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving witness allegations. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

Both the regulations and the courts have suggested factors to be considered when evaluating a claimant's allegations of symptoms. The courts' factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993).[3] The regulatory factors are similar: Daily activities;

---

[3] Talley, Broadbent, Wilson, Hackett, Glass, Huston, Kepler, Thompson and Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms

location, duration, frequency, and intensity of symptoms; factors precipitating and

aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken

to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve

symptoms; and other factors concerning limitations or restrictions resulting from

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.   Analysis

As noted above. the court's review here is deferential, and it finds no error in the

ALJ's evaluation of Plaintiff's allegations of symptoms.  The ALJ found Plaintiff's

"statements concerning the intensity, persistence and limiting effects of [his] symptoms

are not entirely consistent with the medical evidence and other evidence in the record for

the reasons explained in this decision."  (R. 21).  He then explained his reasons for

finding Plaintiff's allegations inconsistent with the record evidence.  (R. 21-24).  He

noted that Plaintiff complained of lower extremity edema in July 2019, but that "his

edema was improved and he showed only 1 to 2+ edema in his lower extremities" in

October 2019.  Id. at 21.  He noted that Plaintiff reported having tremors at a neurological

---

has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical
Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529.
416.929).  Moreover, the Tenth Circuit held its approach to credibility determination was
consistent with the approach set forth in Soc. Sec. Ruling (SSR) 16-3p. Brownrigg v.
Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the framework set out in
Luna, based on 20 C.F.R. §§ 404.1529 and 416.929 (2017) is still the proper standard to
be used as explained in the regulations in effect on September 2, 2020, when this case was
decided.  Nonetheless, to the extent, and only to the extent, "subjective measures of
credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391;
relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-
3p, and is no longer a valid factor to be considered.

evaluation in February 2020 but coordination was intact and he exhibited no involuntary

movements and "the neurologist, indicated that he just needed to be monitored regarding

his tremor." Id. at 22.  In March 2020 he exhibited swelling in his lower extremities but

"[n]o additional treatment was recommended at that time." Id.  In May 2020 he reported

worsening of his confusion, but "[h]e was alert at that time." Id.  At the consultative

psychological exam in February 2019 Plaintiff reported having problems staying on task

but the examination revealed:

> his affect was somewhat anxious.  He did not exhibit evidence of major
> depressive disorder.  His mentation was normal.  He did not exhibit gross
> mental confusion or disturbances of logic or deficits in information
> processing.  His thought processes were clear, coherent, organized, and
> logical.  His thought content was free of delusions, obsessions, or bizarre
> ideas.  He was alert and fully oriented.  He could spell "world" both
> forwards and backward.  He could recite the alphabet quickly and
> accurately.  He could count backwards from 20 to 1.  He could perform
> mental calculations including multiplication and division.  He could repeat
> 6 digits forwards and 5 digits backwards.  He could perform serial 3s and
> serial 7s.  He could name the four states that border Kan[s]as.  He was able
> to provide good interpretations of various proverbs.

Id.  As Plaintiff acknowledges, the ALJ found, "He has exhibited some moderate ongoing

edema in his lower extremities, but it has not been significant in nature." Id. at 23.  The

ALJ recognized Plaintiff "testified that he has significant confusion and disorientation

caused by hepatic encephalopathy," but noted

> While this impairment is likely to cause him to have some confusion, the
> record is not reflective of him having significant confusion.  As noted
> above, he did not exhibit mental confusion during the consultative
> psychological examination.  In fact, he exhibited fairly normal cognitive
> functioning during the consultative examination.  He was able to perform
> mathematical calculations, interpret proverbs, and perform serial threes and
> sevens.  His own reports of symptoms have not shown significant
> symptoms of hepatic encephalopathy.  His treatment providers have not

documented significant confusion during his examinations.  At his follow up at KU Med in October 2019, he was alert, interactive, and appropriate. His most recent examination (when his ammonia levels were increased) showed that he was alert.  His provider did not document any gross confusion at that time.  While he is likely to have some mental limitations imposed by this impairment, the record does not support the level of confusion and disorientation he has alleged.

(R. 23) (citations omitted).  Finally, the ALJ noted, "Despite his allegations of disabling limitations, the record indicates that the claimant can engage in numerous activities of daily living."  Id. at 24.  He went on to explain, "Although the claimant may not be able to engage in all of the activities that he did in the past and it may take him longer to perform the tasks, he is more active than would be expected if all of his allegations were consistent with the record."  Id.

The decision in this case is controlled by the Tenth Circuit's decision in Keyes-Zachery.  As there, the ALJ here did not specifically state which of Plaintiff's statements he discounted and which he credited but he listed many factual assertions by Plaintiff "often following them by a qualifying statement to indicate where he believed [Plaintiff's] testimony was contradicted or limited by other evidence in the record."  695 F.3d at 1169.  And, as there, the ALJ's "approach performed the essential function of [evaluating Plaintiff's allegations of symptoms] by indicating to what extent he credited what [Plaintiff] said when determining the limiting effect of [Plaintiffs] symptoms." Keyes-Zachery, 695 F.3d at 1170 (citing Luna, 834 F.2d at 165-66).

Plaintiff alleges it is his edema (or swelling in his lower extremities) which requires him to lie down during the workday and to elevate his feet above his heart level. Thus, although the ALJ did not explain why he did not assess a requirement for Plaintiff

to lie down or to elevate his feet, he did explain why he did not find Plaintiff's allegations of edema disabling—thereby negating any need for the restrictions alleged by Plaintiff. More is not required. A claimant need not be able to work free of symptoms such as pain or edema. It is sufficient if his symptoms are not of such severity as to preclude work. As the Commissioner points out in her Brief, the record contains no medical opinion that Plaintiff's edema is so severe as to require lying down during the workday or to elevate his feet above heart level during the workday.

Finally, the court finds it necessary to briefly address Plaintiff's argument that this court's decision in <u>Jamie N. v. Saul</u>, Civ. A. No. 20-1164-JWL, 2021 WL 2454427 (D. Kan. June 16, 2021) requires remand in this case. (Pl. Br. 15-16). In <u>Jamie N.</u>, this court found remand was necessary because both the ALJ in his decision and the Commissioner in his Brief did "not explain how the limitations alleged by Plaintiff and recognized by the ALJ—multiple bowel movements on a daily basis, problems with food digestion, gastric bleeding despite surgery in November 2018, and occasional incontinence (R. 17)—are not so functionally limiting as to be disabling." 2021 WL 2454427 at *5. Plaintiff misses the court's explanation that while Jamie N's

> allegations [(of multiple bowel movements on a daily basis, occasional incontinence, and perhaps most importantly gastric bleeding)] may be susceptible of an understanding inconsistent with disabling limitations, that understanding is not obvious on the face of the allegations and, at the least, requires a statement of the ALJ's understanding of the limitations alleged to resolve any ambiguity.

<u>Id.</u> at *5-6. Here, on the other hand, and as the court found above, the ALJ's decision makes clear that the symptom alleged, edema or swelling of the lower extremities, is

10

moderate but not of disabling severity.  That Plaintiff frames the symptom (edema) in terms of alleged limitations (a need to lie down or to elevate his feet) does not change the court's analysis.

Providing the ALJ's evaluation the deference due, the court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated May 4, 2022, at Kansas City, Kansas.


**s/ John W. Lungstrum**
**John W. Lungstrum**
**United States District Judge**